# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

BRYCE FRANKLIN,

      Petitioner,

v.                                            No. 22-cv-699-RB-GJF

RONALD MARTINEZ and
ATTORNEY GENERAL FOR
THE STATE OF NEW MEXICO,

      Respondents.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** is before the Court on Bryce Franklin's ("Franklin" or "Petitioner") pro se "Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By A Person in State Custody" ("Petition"), filed on September 22, 2022 [ECF 1] and Respondent's Answer, filed on August 30, 2024 [ECF 42].[2] Also before the Court are the following motions: Petitioner's Renewed Motion for Appointment of Counsel, filed July 18, 2024 [ECF 38], Petitioner's Motion for Temporary Stay for Time Limit to File Reply, filed September 23, 2024 [ECF 43], and Petitioner's Motion to Enforce July 2, 2024 Order, filed September 23, 2024 [ECF 44].

For the reasons that follow, the Court **RECOMMENDS** that Franklin's Petition [ECF 1]

---

[1] The undersigned files this Proposed Findings and Recommended Disposition pursuant to the presiding judge's Order of Reference, entered on July 3, 2024. ECF 37.

[2] The Court is issuing a recommendation without Franklin's reply brief. Respondents answered the Petition on August 30, 2024, and Petitioner had until September 20, 2024, to file a reply. *See* ECF 36 at 2. On September 23, 2024, the Court received Petitioner's Motion for Temporary Stay for Time Limit to File Reply, dated September 14, 2024. ECF 43. Franklin requested that his twenty-one day period to file a reply be stayed until he receives the trial transcripts (requested in his Motion to Enforce July 2, 2024 Order [ECF 44]) and appointed counsel (requested in his Renewed Motion for Appointment of Counsel [ECF 38]). ECF 43. Having before it an extensive record, including factual development and legal argument, the undersigned recommends denying as moot Franklin's Motion to Enforce July 2, 2024 Order [ECF 44] and Franklin's Renewed Motion for Appointment of Counsel [ECF 38], thereby rendering moot Franklin's Motion for Temporary Stay for Time Limit to File Reply [ECF 43], and denying Franklin's Petition as untimely, or, alternatively, denying Franklin's Petition on the merits. *See Madison v. Ortiz*, 42 F. App'x 131, 133 (10th Cir. 2002); *United States v. Martin*, No. 98-CR-178, 2020 WL 2848191, at *2 n.14 (E.D. Pa. June 2, 2020) (collecting cases explaining that a habeas petitioner has no due process right to file a reply brief).

be **DENIED** and **DISMISSED WITH PREJUDICE**. Accordingly, the Court **FURTHER**

**RECOMMENDS** that Franklin's remaining motions [ECFs 38, 43, 44] be **DENIED AS MOOT**.

## I.    PROCEDURAL BACKGROUND

The Court restates its previous explanation of the procedural background:

In 2015, a jury convicted Franklin of first-degree murder, tampering with evidence, conspiracy to tamper with evidence, and unlawful use of ATM card. *See* Case no. D-1333-CR-2012-00184, Judgment (8/24/2015). The state court sentenced him to life imprisonment followed by 7 ½ years. *Id.* The Judgment was entered on August 24, 2015. *Id.* Franklin filed a direct appeal to the New Mexico Supreme Court, which affirmed the conviction on October 19, 2017. *See* Case no. S-1-SC-35577. Franklin did not file a petition for a writ of certiorari in the United States Supreme Court. The Judgment therefore became final no later than January 18, 2018, the first business day following the expiration of the 90-day limit for filing a petition for a writ of certiorari. *See Mitchell v. Dowling*, 672 F. App'x 792, 794 (10th Cir. 2016) ("[F]or § 2254's purposes, a judgment becomes final when the time expires for filing a petition for certiorari with the U.S. Supreme Court."); *see also* Sup. Ct. R. 13(1) (setting ninety-day limit for filing a petition for a writ of certiorari). Pursuant to 28 U.S.C. § 2244(d)(1)(A), Franklin had one year from the date the Judgment became final, *i.e.*, until January 18, 2019, to file a § 2244 petition for relief.

On November 2, 2018—*i.e.*, 288 days after the judgment became final, Franklin filed two motions in the state court—one seeking a new trial based on newly discovered evidence and another requesting discovery. *See* Case no. D-1333-CR-2012-00184. The state court denied the motions on August 20, 2019. *Id.* And, on December 20, 2019, it denied Franklin's motion (filed October 17, 2019) seeking reconsideration. *Id.* Franklin did not file an appeal within thirty days; therefore, the state court's ruling became final on January 21, 2020.

In Civ. No. 20-cv-358-JB-JFR, this Court found that Franklin's November 2, 2018, state court motions did not stop the one-year clock under 28 U.S.C. § 2244.[3] . . . Based on this analysis, which is adopted in the present case, it is established that November 2, 2018, motions had no tolling effect, and the one-year limitation period expired on January 18, 2019.[4]

---

[3] The Court omitted its quotation to Judge Browning's opinion in Civ. No. 20-cv-358-JB-JFR (Doc. 5 at 4–6). The omitted quotation can be found at ECF 12 at 2–3.

[4] As this Court has already held, "even if the November 2, 2018, motions had a tolling effect, the Petition would nevertheless be untimely." ECF 12 at 4 n.2.

On April 20, 2020, Franklin filed a Motion for Tolling on Habeas Claims in this Court, seeking to challenge his state murder conviction and asking the Court to toll the one-year habeas limitation period set forth in 28 U.S.C. § 2254. *See* Civ. No. 20-358-JB-JFR (Doc. 1). The Court filed a Memorandum Opinion and Order on September 20, 2020, showing that Franklin's § 2254 claims appeared time barred for multiple reasons, and allowing him to dismiss the action without prejudice or proceed by filing a habeas petition that addressed the time bar. *Id.* When Franklin did not timely respond, the Court dismissed the matter without prejudice. *Id.* (Doc. 6).

While his habeas-related motion was pending in this Court, Franklin filed a state habeas petition on October 6, 2020. See Case no. D-1333-CR-2012-00184, Petition for Writ of Habeas Corpus (10/6/2020). The state trial court denied the petition on February 4, 2021. *See id.* Procedural Order on Petition for Writ of Habeas Corpus (2/4/2021). Thereafter, Franklin continued to pursue relief in the state court by filing, inter alia:

- A motion to reconsider the denial of his habeas petition. Case no. D-1333-CR-2012-00184 (3/12/2021 Motion).

- A petition for a peremptory writ of mandamus in the state supreme court seeking an order forcing the presiding state court judge's recusal. Case No. S-1-SC-38726 (3/15/2021 Petition).

- And a second petition for a writ of habeas corpus. Case no. D-1333-CR-2012-00184 (8/14/2023 Habeas Corpus Petition)

Franklin filed the present Petition on September 22, 2022. [ECF 1]. As grounds for his Petition, he cites: (1) prosecutorial misconduct; (2) ineffective assistance of counsel; (3) newly discovered evidence; and (4) insufficient evidence to support his convictions. (Doc. 1).

ECF 12 at 1–5. On November 19, 2023, this Court, under this case number, denied without

prejudice Franklin's Motion to Appoint Counsel [ECF 2], Franklin's Motion for Leave to Conduct

Discovery [ECF 3], and Franklin's Motion for Leave to Compel Legal Access [ECF 4]. ECF 12 at

9.

## II.    FACTUAL BACKGROUND

Pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), the Court

presumes the factual findings of the New Mexico Supreme Court ("NMSC") are correct. *See* 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74 (2007). On direct appeal, the NMSC summarized the facts underlying Franklin's convictions as follows:

> On December 1, 2012, the police discovered the corpse of Fernando Enriquez at the bottom of a collapsed lava tube (a large hole) in El Malpais National Monument, which is in west-central New Mexico. Information the police received indicated that Franklin had killed Enriquez. When police discovered Enriquez's corpse and received the information linking Franklin to Enriquez's death, Franklin was already incarcerated for violating probation in an entirely unrelated matter and was serving the approximately five remaining years of a nine-year sentence. A warrant to arrest Franklin for the suspected killing of Enriquez was served on Franklin at the Cibola County Detention Center where he was already imprisoned.

> On December 17, 2012, Franklin was indicted for the murder of Enriquez. On December 26, 2012, Franklin filed a pro forma demand for a speedy trial. During pretrial proceedings, Franklin filed two almost-identical motions to dismiss for violation of his right to a speedy trial: the first was filed on May 1, 2014 and the second was filed on November 17, 2014.

> Franklin's trial commenced on August 10, 2015, roughly thirty-two months after he was indicted. The district court finally adjudicated the speedy-trial issue at the outset of trial. After both parties presented argument, the district court denied the motion.[5]

> Defendant Bryce Franklin was convicted of first degree murder and other offenses. He was sentenced to life imprisonment, plus seven and one-half years to be run consecutively[.][6]

## III.    APPLICABLE LAW

### A.  The AEDPA

The "AEDPA requires that [courts] apply a difficult to meet and highly deferential standard in federal habeas proceedings under 28 U.S.C. § 2254; it is one that demands that state-court

---

[5]  ECF 42-1 at 150–51 (Ex. Q); *see also* Respondent's statement of facts in ECF 24 at 2–12 and quoted in part in ECF 42 at 2–6.

[6]  ECF 42-1 at 149–50 (Ex. Q).

decisions be given the benefit of the doubt."[7] *Simpson v. Carpenter*, 912 F.3d 542, 562 (10th Cir. 2018) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)) (internal quotation marks omitted). "[T]he standard of review applicable to a particular claim depends upon how that claim was resolved by the state courts." *Cole v. Trammel*, 735 F.3d 1194, 1199 (10th Cir. 2013), *superseded after rehearing by* 755 F.3d 1142, 1146 (10th Cir. 2014). "When a petitioner includes in his habeas application a 'claim that was adjudicated on the merits in State court proceedings,' a federal court shall not grant relief on that claim unless the state-court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Simpson*, 912 F.3d at 562 (quoting 28 U.S.C. § 2254(d)(1)–(2)).

To determine "whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact," a federal habeas court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and give appropriate deference to that decision." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (internal quotations and citations omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion. In that case, a federal habeas court simply reviews the specific reasons

---

[7] Franklin may take issue with this Court's obligation to defer to Judge Eichenwald's decisions because Franklin has filed numerous motions, none of which were granted, accusing Judge Eichenwald of bias and seeking his recusal. *See* ECF 42-1 at 293–97 (Ex. JJ); ECF 42-1 at 412–17 (Ex. ZZ); ECF 42-2 at 9–18 (Ex. HHH). These motions do not affect the deference that this Court owes Judge Eichenwald. Upon review of the record, a reasonable observer could not question Judge Eichenwald's impartiality in presiding over Franklin's trial, appeals, and subsequent litigation. Moreover, the facts alleged by Franklin in these motions do not demonstrate improper judicial bias.

given by the state court and defers to those reasons if they are reasonable." *Id*. Review becomes more difficult, however, when a state court fails to accompany its decision with a reasoned opinion. In such an instance, a federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale."[8] *Id*.

Once a federal habeas court locates the relevant rationale, it then can determine whether the decision was contrary to or an unreasonable application of Supreme Court law. A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). This does not require the state court to cite applicable Supreme Court precedent or even demonstrate an "*awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradict them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original).

A state court decision is an "unreasonable application" of Supreme Court law if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. Courts apply this objective unreasonableness inquiry "in view of the specificity of the governing rule: 'The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" *Simpson*, 912 F.3d at 563 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). If, however, "a legal rule is

---

[8] Here, several state court decisions have been made in Franklin's case. Most are summary dismissals referencing the decisions providing a relevant rationale. *See, e.g.*, ECF 42-1 at 311 (Ex. LL); ECF 42-2 at 154–57 (Ex. TTT); ECF 42-2 at 211–14 (Ex. YYY). The Court focuses primarily on the Order Dismissing Motion for New Trial and Denying Motions Requesting Discovery [ECF 42-1 at 286–87 (Ex. GG)] and the Procedural Order on Petition for Writ of Habeas Corpus [ECF 42-1 at 482–92 (Ex. CCC)] as the last related state court decisions that provide a relevant rationale.

specific, the range may be narrow"; thus, "[a]pplications of the rule may be plainly correct or incorrect." *Yarborough*, 541 U.S. at 664. It is also important to note that "an unreasonable application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"; instead "that application must also be unreasonable." *Id*. at 411.

### B. Pro Se Pleadings

A pro se litigant's pleadings are construed liberally and subjected to a less stringent standard than pleadings drawn by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court is to "make some allowances for 'the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110). Nonetheless, "it is not the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall*, 935 F.2d at 1110. Moreover, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants[,]" because "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (internal quotation omitted); *see Yang v. Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008) (applying standard to pro se habeas petitioner).

### C. Timeliness of Petitions for the Writ of Habeas Corpus

Title 28, United States Code, section 2244(d) imposes a "1-year limitation" on "an

application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The one-year limitation period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A).

1.    Statutory Tolling

The one-year limitation period does not run while the Petitioner seeks "post-conviction or other collateral review with respect to the pertinent judgment or claim[.]" § 2244(d)(2). Additionally, the one-year limitation period is subject to statutory tolling such that it begins on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," § 2244(d)(1)(D), or "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." § 2244(d)(1)(B).

2.    Equitable Tolling

The one-year limitation period in § 2244(d) is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is appropriate only in "rare and exceptional circumstances," *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000), and "a garden variety claim of excusable neglect" is not enough to warrant application of the doctrine. *Holland*, 560 U.S. at 651 (internal quotation marks and citation omitted).

### D. Actual Innocence

"As a gateway, a claim of actual innocence enables habeas petitioners to overcome a procedural bar in order to assert distinct claims for constitutional violations." *Farrar v. Raemisch*, 924 F.3d 1126, 1130 (10th Cir. 2019) (internal quotation omitted). To establish entitlement to the actual innocence gateway, however, a petitioner must show that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Thus, to prevail on an actual innocence claim, a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Schlup*, 513 U.S. at 327 (internal quotation omitted). The claim must be supported by "new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. When assessing a claim of actual innocence, "the habeas court must consider all the evidence, old and new, incriminating and exculpatory, and thereby base its probabilistic determination about what reasonable, properly instructed jurors would do on the total record." *Fontenot v. Crow*, 4 F.4th 982, 1052 (10th Cir. 2021) (internal quotation omitted).

### IV. PRIMARY ARGUMENTS

### A. Statutory Tolling[9]

Franklin provides numerous arguments for why the one-year limitation period for filing a

---

[9] Franklin raises many procedural arguments regarding how the end date of the one-year limitation period should be calculated. *See* ECF 32 at 2–10. For the most part, the Court has already ruled on these issues. *See* ECF 12 (November 19, 2023 Memorandum Opinion and Order). To the extent that Franklin raised new issues in his response to the Court's November 19, 2023 Memorandum Opinion and Order, he insists that (1) the Court did not consider the Prison Mailbox Rule when calculating relevant dates [ECF 32 at 10]; and (2) he did not know that certain state court motions would toll his one-year time frame [*id.* at 8].

§ 2254 petition is inapplicable. First, he argues that his Motion for New Trial, filed November 2, 2018, should be construed as a state court habeas petition filed within the one-year limitation period because pro se pleadings are construed liberally. ECF 32 at 2–4.

Second, Franklin asserts that the one-year limitation period should be tolled pursuant to § 2244(d)(1)(B) because the state prevented him from filing a habeas petition. *Id.* at 11–12. Franklin claims that the state prevented him from filing a habeas petition by failing to turn over evidence and failing to provide constitutionally adequate law libraries. *Id.* at 11, 13. He argues that the failure to disclose evidence prevented him from discovering the factual predicate of his claims and constituted a state-created impediment to filing. *Id.* at 11–12. Additionally, Franklin contends that constitutionally inadequate law libraries were state-created impediments to filing. *Id.* at 13–16.

For their part, Respondents argue first that Franklin's November 2, 2018 Motion for New Trial should not be construed as a habeas petition. ECF 42 at 13–17. Additionally, they point out that Franklin's habeas petition is still untimely even under his own proposed timeline. *Id.* at 22. Respondents further assert that Franklin not having certain phone records or various police and trial documents is neither a state-created impediment that prevented him from filing a habeas petition nor a newly-discovered factual predicate that tolls the one-year limitation period. *Id.* at 23–28. Finally, Respondents contend that the allegedly inadequate law libraries at facilities where Franklin was housed do not constitute a state-created impediment to filing a habeas petition. *Id.* at 26.

### B.  Equitable Tolling

Alternatively, Franklin argues that the one-year limitation period is subject to equitable tolling. ECF 32 at 17–18. Franklin insists that he has pursued his rights diligently, and that inadequate law libraries in correctional facilities constitute an extraordinary circumstance that

prevented his timely filing of a habeas petition. *Id.*

For their part, Respondents contend that equitable tolling does not apply because neither general ignorance of the law, nor specific ignorance of the AEDPA one-year limitation period, amounts to an exceptional circumstance. ECF 42 at 28–29. Respondents emphasize that equitable tolling is limited to rare and exceptional circumstances, of which Franklin's is not. *Id.* at 28.

### C. Actual Innocence

Franklin insists that, as an alternative to tolling, the Court should apply the actual innocence gateway around the AEDPA one-year limitation period because he has new evidence, not presented at trial, which evidence is sufficient to show that no reasonable juror would have convicted Franklin. ECF 32 at 19–20. Franklin asserts that the state relied heavily at trial on Bearden's testimony, and Franklin provides four new pieces of evidence to discredit Bearden's testimony. First, Franklin points to a police interview of Franklin's friend Richard Werner and Richard's mother that establishes an alibi. *Id.* at 20. Second, Franklin claims that former inmate Anthony Apodaca is willing to testify that Bearden confessed to killing Enriquez and framing Franklin. *Id.* Third, Franklin states that Enriquez's phone records discredit Bearden's claim that he did not know Enriquez before the night of his murder. *Id.* Fourth, Franklin seeks to present expert testimony on bullet trajectory that would render Bearden's testimony of the shooting inherently improbable. *Id.*

Respondents highlight that actual innocence is a narrow exception, and that new evidence is to be considered alongside evidence presented at trial. ECF 42 at 29–34. As for the Werner police interview, Respondents point out that Franklin's whereabouts on the morning of October 31, 2012, do not constitute an alibi. *Id.* at 33. As for Apodaca's statement, Respondents insist that it can only be used to impeach Bearden's testimony, and that Apodaca is an impeachable witness. *Id.* at 33–

34. As for Enriquez's phone records, Respondents posit that Franklin overstates their importance because a reasonable juror could find that Enriquez was merely sending directions to Franklin, the driver, through Bearden, the passenger. *Id.* at 32.

### D. Claims Presented in Franklin's Habeas Petition

In the instant Petition, Franklin raises four grounds for habeas relief. First, he argues that the state engaged in prosecutorial misconduct by (1) failing to disclose exculpatory evidence; (2) failing to correct false testimony; and (3) improperly playing and mischaracterizing evidence. ECF 1 at 17–18. Second, Franklin contends that he received ineffective assistance from his trial counsel because counsel (1) failed to seek suppression of impermissible evidence; (2) failed to ensure Franklin was present for depositions; (3) failed to investigate certain evidence; and (4) failed to request proper jury instructions. *Id.* at 19–20. Third, Franklin asserts that newly discovered evidence exists, specifically (1) Apodaca's statement that Bearden confessed to killing Enriquez and blaming Franklin; (2) Enriquez's phone records; and (3) the Werner police interview, which indicates that Franklin was at the Werners' house the morning prior to the murder. *Id.* at 21. Fourth, Franklin claims that insufficient evidence exists to support his conviction because (1) the autopsy report makes Bearden's testimony about the shooting inherently improbable; and (2) the state did not prove beyond a reasonable doubt that Franklin killed Enriquez with deliberate or express malice. *Id.* at 22.

### V.   ANALYSIS

This section proceeds in seven parts. First, the Court recommends adopting its previous determination that Franklin had until January 18, 2019, to file a habeas petition under the AEDPA. *See* ECF 12 at 2. Second, the Court recommends against construing Franklin's Motion for New

Trial as a habeas petition for the purposes of tolling. Third, the Court recommends finding that statutory tolling does not apply to the Petition. Fourth, the Court recommends against applying equitable tolling to the Petition. Fifth, the Court recommends against finding an entitlement to the actual innocence gateway. Sixth, the Court recommends denying the Petition on the merits. Seventh, the Court recommends denying as moot all pending procedural motions.

### A. The Court recommends finding the Petition untimely under the general rule established by AEDPA.

In a November 19, 2023 Memorandum Opinion and Order, this Court stated that "Franklin had one year from the date the Judgement became final, *i.e.*, January 18, 2019, to file a [habeas] petition[.]" ECF 12 at 2. The Court adopted reasoning from another of Franklin's cases where the Court had to address the issue of timeliness [*id.* at 2–3], and it reasoned that even if Franklin's November 2, 2018 motions in state court had a tolling effect, Franklin's habeas petition would still be untimely [*id.* at 7–8]. The Court relies on the same reasoning here. Franklin signed his Petition on September 18, 2022, and the Petition was filed four days later. ECF 1 at 16. Using either date, the Petition is untimely as it was filed more than three years after the January 18, 2019 deadline.

The Court previously ordered Franklin to show cause why his petition should not be dismissed as untimely. ECF 12. Franklin responded, arguing that (1) his Motion for a New Trial should be liberally construed as a habeas petition; (2) statutory tolling applies to his Petition; (3) equitable tolling applies to his Petition; and (4) he is entitled to the actual innocence gateway. *See* ECF 32. This Opinion will address the exceptions cited by Franklin in turn.

### B. The Court recommends against construing Motion for New Trial as a habeas petition.

This Court adopted the analysis in *Franklin v. Att'y Gen. for N.M.*, No. 20-CV-358 JB/JFR,

2020 WL 6315295, at *2–3 (D.N.M. Oct. 28, 2020) where Judge Browning reasoned that Franklin's November 2, 2018, state court motions did not stop the one-year limitation period. ECF 12 at 2–3. Franklin filed two motions on November 2, 2018, a Motion for Leave to Conduct Discovery [ECF 42-1 at 206 (Ex. V)] and a Motion for a New Trial Based on Newly Discovered Evidence, under NMRA 5-614 ("Motion for New Trial") [ECF 42-1 at 207–19 (Ex. W)]. Judge Browning reasoned that the Motion for Leave to Conduct Discovery did not stop the one-year clock because "[t]he Tenth Circuit has repeatedly found that a state motion seeking discovery does not trigger tolling for purposes of federal habeas review." *See Franklin*, 2020 WL 6315295, at *2 (citing screening memorandum opinion and order) (collecting cases); ECF 12 at 3. Next, Judge Browning reasoned that the Motion for New Trial did not stop the one-year limitation period because only properly filed applications for post-conviction or collateral review toll the limitation period, and Franklin's Motion for New Trial was not properly filed under the two-year deadline in NMRA 5-614(C). *See Franklin*, 2020 WL 6315295, at *3–4 (citing screening memorandum opinion and order); ECF 12 at 3. In response to this Court's adoption of Judge Browning's decision, Franklin urges this Court to construe his Motion for New Trial as a habeas petition – which would toll the one-year limitation period – because he is a pro se litigant. ECF 32 at 2–4.

The Motion for New Trial cannot be construed as a habeas petition because such a construction would allow Franklin to avoid procedural requirements applicable to all litigants. *See Garrett*, 425 F.3d at 840; *Yang*, 525 F.3d at 929. The Motion for New Trial does not need allowances for common pro se deficiencies because it cites proper authority, states a coherent legal theory, is well written, and demonstrates familiarity with pleading requirements. *See* ECF 42-1 at 207–19 (Ex. W). Additionally, construing the Motion for New Trial as a habeas petition would

allow Franklin to avoid the applicability of the one-year limitation period in the AEDPA – a procedural requirement specified by Congress to apply to all litigants seeking access to habeas courts. *See Garrett*, 425 F.3d at 840; § 2244(d). Franklin only sought to avoid the one-year limitation period upon learning that his Petition is likely time-barred. *See* ECF 12 at 9; ECF 32 at 2–4. Moreover, Franklin knew or had reason to know the general differences between a habeas petition and a motion for new trial because he filed a habeas petition to challenge a disciplinary hearing before mailing the Motion for New Trial. ECF 42-1 at 171–202 (Ex. S); ECF 32 at 5. Accordingly, the Court will not construe Franklin's Motion for New Trial as a habeas petition.[10]

### C. The Court recommends against applying statutory tolling to the Petition.

Franklin advances three theories for why the one-year limitation period for filing a habeas petition in the AEDPA is subject to statutory tolling. First, Franklin argues that the one-year limitation period should be tolled pursuant to § 2244(d)(1)(D) to begin on the date that he discovered the factual predicates underlying his claims. ECF 32 at 12. Second, he asserts that the one-year limitation period should be tolled pursuant to § 2244(d)(1)(B) because state action in violation of federal law prevented him from discovering certain evidence that he needed to file the Petition. ECF 32 at 11. Third, Franklin contends that the one-year limitation period should be tolled pursuant to § 2244(d)(1)(B) because constitutionally inadequate law libraries are state-created impediments in violation of federal law that prevented him from timely filing the Petition. ECF 32

---

[10] Franklin contends that the Court failed to consider the prison mailbox rule when calculating the tolling impact of his Motion for New Trial. ECF 32 at 5. The prison mailbox rule, however, does not impact the Court's analysis because it is not construing the Motion for New Trial as a habeas petition; therefore, it has no tolling effect. Additionally, Franklin insists that his Motion for New Trial, construed as a habeas petition, continues to toll his one-year filing window while his appeal was pending and for the six months that he waited to receive the order of dismissal. *Id.* at 6–7. This argument is unavailing because the Court rejects the premise of Franklin's argument: that his Motion for New Trial is properly construed as a habeas petition.

at 13.

        1.   <u>The Court recommends against applying § 2244(d)(1)(D) because Franklin discovered, or could have discovered, the factual predicate of his claims over a year before mailing his Petition.</u>

Franklin contends that the one-year limitation period should be tolled pursuant to § 2244(d)(1)(D) because he has shown due diligence in trying to obtain his discovery but could not discover the factual predicate of his claims in time to file a timely Petition.[11] ECF 32 at 12.

As to the first claim in his Petition, Franklin raises four instances of prosecutorial misconduct. ECF 1 at 17–18. First, he argues that the state failed to disclose Enriquez's (the victim's) phone records.[12] *Id.* Second, Franklin highlights that the state failed to correct Officer Nathan Lucero's trial testimony as to whether Franklin denied killing Enriquez. *Id.* at 17. Third, Franklin contends that the state failed to call Franklin's mother as a witness after it played "irrelevant and inflam[m]atory" phone calls between Franklin and his mother. *Id.* at 18. Fourth, Franklin argues that the state failed to disclose the Werner police interview, which, according to Franklin, provides him an alibi for Enriquez's murder. *Id.* Franklin discovered the factual predicate underlying the alleged failure to disclose Enriquez's phone records in 2015. *See id.* at 17. Additionally, Franklin discovered *at trial* the factual predicate underlying his claims concerning

---

[11] The Petition presents this theory as an alternative to the argument that the same newly discovered evidence is a state-created impediment in violation of federal law that prevented timely filing. ECF 32 at 11–12. Franklin states that "[a]s discussed elsewhere, Franklin has shown due diligence in trying to obtain his discovery[.]" *Id.* at 12. Elsewhere, Franklin explains that he "submitt[ed] numerous requests to state agencies, his lawyer, [and] the public defender[']s office for discovery[,]" and "filed lawsuit after lawsuit just trying to obtain discovery[.]" *Id.* at 8 (citing ECF 33). Additionally, Franklin cites to a state court case where he prevailed and was awarded access to certain documents about his case. *Id.* (citing *Franklin v. N.M. Dep't of Pub. Safety*, 2022-NMCA-058; – N.M. –; 517 P.3d 953).

[12] In arguing that the one-year limitation period should be tolled, Franklin highlights the dates that he was provided with relevant evidence. ECF 32 at 11. The date of receipt, however, is not relevant. The tolling inquiry focuses on when the petitioner discovered the existence of relevant evidence. *See Taylor v. Martin*, 757 F.3d 1122, 1123–24 (10th Cir. 2014).

Officer Lucero's testimony and his phone calls with his mother. *See Taylor*, 757 F.3d at 1123–24 (factual predicate underlying claim of false testimony discovered on the day of the testimony). Franklin discovered, or could have discovered through due diligence, the factual predicate underlying the Werner police interview because Franklin insists that his attorney became aware *during trial* of the interview. ECF 42-2 at 89 (Ex. OOO); *see Jimerson v. Payne*, 957 F.3d 916, 925 (8th Cir. 2020) (petitioners are deemed to have discovered the factual predicate underlying a claim when their attorneys discover the factual predicate). Before a falling out, Franklin used the Werners' house to shower and play video games. ECF 42-2 at 111 (Ex. OOO). Due diligence would require Franklin to have contacted the Werners before trial to corroborate an alibi defense.[13]

As to the second claim in his Petition, that of ineffective assistance of counsel, Franklin points to five factual predicates. First, he criticizes his trial counsel's failure to seek suppression of Ed Poore's (an acquaintance of the Franklins) testimony because it was the fruit of an involuntary statement provided by Franklin's sister, Lacey. ECF 1 at 19. Second, Franklin asserts that his trial counsel failed to seek suppression of statements Franklin made to police in violation of his Fifth and Sixth Amendment rights. *Id.* Third, Franklin contends that his trial counsel prevented Franklin from attending pre-trial depositions. *Id.* Fourth, Franklin insists that his trial counsel failed to investigate various items of evidence leading up to trial. *Id.* at 20. Fifth, Franklin asserts that his trial counsel failed to request jury instructions on motive or accomplice liability. *Id.* Franklin discovered, or could have discovered through due diligence, the factual predicates underlying this

---

[13] Respondents highlight that Franklin has not been consistent with his alibi. Franklin claimed to have been with his then-fiancé on the day Enriquez was murdered. ECF 42-1 at 379 (Ex. VV). To justify his failure to raise the Werner alibi, Franklin explained that he did not know that anyone saw him at the Werner house on the morning of October 31, 2012. ECF 26 at 5. As the Court will explain, corroboration of the Werner alibi would not exonerate Franklin.

claim at his August 2015 trial because Franklin points only to evidence improperly presented, or improperly not presented, at trial. *See Taylor*, 757 F.3d at 1123–24.[14]

As to the third claim in his Petition, newly discovered evidence, Franklin points to three factual predicates, two of which the Court has addressed – Enriquez's phone records and the Werner police interview. ECF 1 at 21. Franklin also points to Anthony Apodaca's willingness to testify that Bearden confessed to killing Enriquez and framing Franklin. *Id.* Franklin states that he received a note from Apodaca "[a] short time after" discovering Enriquez's phone records [ECF 42-1 at 323 (Ex. QQ)], which he discovered in 2015 [ECF 1 at 17]. Franklin first mentioned Apodaca on October 10, 2018. ECF 42-1 at 206 (Ex. U).[15]

For his insufficient evidence claim, Franklin points to two factual predicates. First, he insists that Bearden's testimony is inherently improbable because it conflicts with the autopsy report. ECF 1 at 22. Second, Franklin alleges that the state did not produce at trial evidence to support a first-degree murder conviction. *Id.* Franklin discovered the factual predicate of these claims at trial. *See Taylor*, 757 F.3d at 1123–24.

Franklin discovered, or could have discovered through due diligence, most factual predicates underlying his claims during his trial. Consequently, October 10, 2018, is the latest date that Franklin discovered any factual predicates. Even if this Court tolled the one-year limitation

---

[14] Franklin further argues that "[t]he cumulative effect of the prosecutorial misconduct and ineffective [assistance of] counsel warrants a new trial." ECF 1 at 20. This claim does not impact the § 2244(d)(1)(D) analysis because it incorporates all factual predicates, which are discussed herein, underlying his prosecutorial misconduct and ineffective assistance of counsel claims.

[15] Franklin's third asserted ground for habeas relief is newly discovered evidence. As will be discussed *infra*, this is not an actionable claim for habeas relief. It can, however, be used to bypass procedural requirements and allow a court to decide the petition on the merits. Accordingly, the Court will address this ground for relief when discussing whether Franklin is entitled to the actual innocence gateway. Moreover, the Court does not consider when Franklin discovered the factual predicates underlying this ground for relief because (1) it is not actionable in and of itself; and (2) a petitioner can always assert actual innocence to overcome procedural default.

period to expire on October 10, 2019, the Petition, dated September 18, 2022 [ECF 1 at 16], would still be untimely by nearly three years. Accordingly, applying § 2244(d)(1)(D) does not make the Petition timely.

> 2. The Court recommends against applying § 2244(d)(1)(B) because allegedly withheld evidence does not constitute a state-created impediment that prevented Franklin from filing a timely habeas petition.

Franklin contends that the one-year limitation period should be tolled pursuant to § 2244(d)(1)(B), because the state impeded him from discovering evidence, which prevented him from filing a timely habeas petition. ECF 32 at 11. According to Franklin, the state prevented his timely filing by failing to discover or disclose (1) Enriquez's phone records; (2) Franklin's police interview; (3) Lacey Franklin's police statement; (4) the Werner police interview; and (5) phone recordings played at trial. ECF 32 at 11.

To avail themselves of statutory tolling pursuant to § 2244(d)(1)(B) for withheld evidence, a petitioner must "explain why the documents held by the state were necessary to pursue his federal claim[.]" *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006). Additionally, the withholding of documents must have actually prevented the petitioner from filing. *See Aragon v. Williams*, 819 F. App'x 610, 613 (10th Cir. 2020) ("A review of our case law shows § 2244(d)(1)(B) typically applies when the state thwarts a prisoner's access to the courts, for example, by denying an inmate access to his legal materials or a law library."); *Garcia v. Hatch*, 343 F. App'x 316, 319 (10th Cir. 2009); *Ramirez v. Yates*, 571 F.3d 993, 1001 (9th Cir. 2009) (stating that § 2244(d)(1)(B) applies only when the state "altogether prevented [petitioner] from presenting his claims in *any* form, to *any* court.") (emphasis in original); *Jones v. Crow*, 636 F. Supp. 3d 1349, 1353 (E.D. Okla. 2022); *Grauberger v. Dooley*, No. 10-CV-3004 DWF/SER, 2011 WL 4477323, at *4 (D. Minn. June 7,

2011) (reasoning that withholding documents did not prevent a petitioner from filing pursuant to § 2244(d)(1)(B) because petitioner filed before receiving the documents).

The First Circuit provides an example in *Wood v. Spencer*, adopted in *Heniemann v. Murphy*, 401 F. App'x 304 (10th Cir. 2010). 401 F. App'x 304, 309–10 (quoting *Wood v. Spencer*, 487 F.3d 1, 7 (1st Cir. 2007)). There, the First Circuit compared prevention in the habeas context to a barrier on a highway. *Wood*, 487 F.3d at 7. If the barrier spanned the entire width of the highway and was sufficiently tall and durable enough to block a motorist, that barrier *prevented* the motorist from proceeding. *See id*. Conversely, a barrier did not *prevent* a motorist from proceeding if the motorist had space to drive around but chose not to. *See id*.

Here, the allegedly withheld evidence does not entitle Franklin to statutory tolling because it did not prevent him from filing a timely habeas petition. Initially, Franklin does not "explain why the documents held by the state were necessary to pursue his federal claim" because he filed the Petition before receiving all the information he seeks. *See Clark*, 468 F.3d at 714; *Grauberger*, 2011 WL 4477323, at *4; ECF 32 at 11. Moreover, Franklin has not explained how the withholding *prevented* him from filing a timely habeas petition. *See Aragon*, 819 F. App'x at 613 *Wood*, 487 F.3d at 7. Like the First Circuit's example in *Wood*, Franklin's difficulties obtaining evidence presented a roadblock. *Wood*, 487 F.3d at 7. Franklin, however, had space to go around the roadblock and file a petition with his claims unrelated to the allegedly withheld evidence. *See* ECF 1 at 17–22 (ineffective assistance of counsel for failure to investigate or request proper instructions, newly discovered evidence based on Apodaca's statement, and insufficient evidence based on Bearden's testimony and the autopsy report). Given the claims unrelated to the allegedly withheld evidence that Franklin could have brought, the state did not "prevent[] [him] from presenting his

claims in *any* form, to *any* court." *See Ramirez*, 571 F.3d at 1001.

Moreover, applying § 2244(d)(1)(B) would not help Franklin. As previously discussed, Franklin knew or should have known *by trial* of the allegedly withheld evidence. Franklin could have filed a habeas petition alleging the facts in the withheld evidence as best he knew them; he did not have to wait for hard copies. *See Garcia v. Bowen*, 429 F. Supp. 3d 924, 928–29 (D.N.M. 2019). Thus, even if the withheld evidence constituted an impediment that prevented timely filing, that impediment was removed after trial. Applying tolling for the year after trial would impact neither the January 18, 2018 through January 18, 2019 period nor the timeliness of the Petition.

The allegedly withheld evidence does not constitute a state-created impediment that prevented Franklin from filing a timely habeas petition; therefore, Franklin is not entitled to tolling pursuant to § 2244(d)(1)(B).

3. The Court recommends against applying § 2244(d)(1)(B) because potentially inadequate law libraries do not constitute a state-created impediment that prevented Franklin from filing a timely habeas petition.

Franklin contends that the one-year limitation period should be tolled because constitutionally inadequate law libraries are state-created impediments that prevented him from filing a timely habeas petition. ECF 32 at 13. He insists that the one-year limitation period began on January 1, 2020, the date he learned of the AEDPA. *Id.* at 17. The Court disagrees for two reasons. First, there is no constitutional violation against Franklin because he did not suffer an actual injury. Second, inadequate law libraries did not prevent him from filing a timely habeas petition.

a. *Franklin's right to access the courts has not been violated because he has not suffered actual injury.*

Inmates in state prison have a Fourteenth Amendment Due Process Clause right to access

the courts. *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993) (internal quotations omitted) (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)). Maintaining an adequate law library is one way for states to ensure that inmates can access the courts. *See Bounds*, 430 U.S. at 830–31; *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).

In *Lewis v. Casey*, 518 U.S. 343 (1996) the Supreme Court clarified that inmates do not have a freestanding right to a law library. 518 U.S. at 349–52. The Court stated that an inmate alleging a deprivation of the right to access the courts must establish actual injury. *Id.* at 349. Inmates establish actual injury by showing that a constitutionally inadequate system for allowing inmates to access the courts hindered that inmate's efforts to pursue a legal claim. *Id.* at 351; *see Garcia*, 343 F. App'x at 318. Moreover, the hindrance must have caused the alleged actual injury to the ability to pursue litigation. *See Clark v. Oakley*, 560 F. App'x 804, 807 (10th Cir. 2014) (citing *Simkins v. Bruce*, 406 F.3d 1239 (10th Cir. 2005)).

Here, Franklin's right to access the courts has not been violated because he has not suffered actual injury. *See Lewis*, 518 at 349–51. Franklin contends that the law libraries at the Penitentiary of New Mexico ("PNM") and the Guadalupe County Correctional Facility ("GCCF") were constitutionally inadequate because they used a cell delivery system and lacked copies of the AEDPA. ECF 32 at 13–14. Franklin cannot show, however, that these inadequacies hindered his efforts to pursue a legal claim because they did not cause him to file a late habeas petition. *See Lewis*, 518 U.S. at 351; *Clark*, 560 F. App'x at 807. On May 1, 2018, over eight months before the end of his one-year limitation period, Franklin filled out a § 2254 habeas petition on an AO 241 form challenging a disciplinary hearing held at the Northeastern New Mexico Detention Facility. ECF 42-1 at 171 (Ex. S). The AO 241 form contains the full text of § 2244(d)(1), the portion of the

AEDPA setting forth the one-year limitation period and its exceptions. *Id.* at 184. On Franklin's AO 241 form, subsection A is partially underlined, and subsection B is circled, suggesting that Franklin read the text of § 2244(d)(1). *Id.* Thus, the lack of the AEDPA at PNM and GCCF prison law libraries did not cause Franklin not to learn of the one-year limitation period. *See Clark*, 560 F. App'x at 807. Even if the PNM and GCCF law libraries were inadequate in the abstract for lacking copies of the AEPDA, they did not hinder Franklin's ability to file a timely habeas petition because he still accessed the relevant portion of the AEDPA. *See Lewis*, 518 at 351. Accordingly, Franklin suffered no actual injury. *See id.*

Franklin relies heavily on *Egerton v. Cockrell*, 334 F.3d 433 (5th Cir. 2003) for the proposition that an "inadequate law library may constitute a state-created impediment that would toll the one year requirement" under § 2244(d)(1)(B). ECF 32 at 16–17. Franklin contends that *Egerton* "is spot on with [his] case." *Id.* at 17. In *Egerton*, a habeas petitioner, like Franklin, filed a facially untimely habeas petition. *See* 334 F.3d at 434–35. The petitioner argued that he could not file a direct appeal of his conviction because he was housed in a prison unit that either did not allow inmates law library privileges, or did not have a copy of AEDPA. *Id.* at 435. The Fifth Circuit reasoned that the state's "failure to make available to a prisoner the AEDPA . . . is just as much of an impediment as if the State were to take 'affirmative steps' to prevent the petitioner from filing the application." *Id.* at 438. The Fifth Circuit further reasoned that the absence of all federal materials from a prison library, without providing an adequate alternative to inform prisoners of their rights, violates an inmate's right to access the courts. *Id.* (citing *Bounds*, 430 U.S.). The Fifth Circuit concluded that an inadequate law library may constitute a state-created impediment to filing that would toll the AEDPA under § 2244(d)(1)(B), and that the petitioner's one-year limitation

period began when he was transferred to a facility with an available copy of the AEDPA. *Id.* at 439.

As an initial matter, the Fifth Circuit's interpretation of § 2244(d)(1)(B) does not bind this Court. *See Dobbs v. Anthem Blue Cross & Blue Shield*, 600 F.3d 1275, 1279 (10th Cir. 2010). Nonetheless, the Fifth Circuit's conclusion aligns with the other circuits to have addressed the issue: a law library lacking the AEDPA may be a sufficient basis for statutory tolling if the AEDPA's absence caused a petitioner's late filing. *See Simmons v. United States*, 974 F.3d 791, 796 (6th Cir. 2020); *Finch v. Miller*, 491 F.3d 424, 427 (8th Cir. 2007); *Moore v. Battaglia*, 476 F.3d 504, 506–07 (7th Cir. 2007); *Egerton*, 334 F.3d at 439; *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000).

The Tenth Circuit has not expressly adopted *Egerton*. *See Munoz v. Bravo*, 419 F. App'x 824, 825–26 (10th Cir. 2011) (citing *Egerton*, 334 F.3d at 438); *Hill v. Workman*, 141 F. App'x 754, 756 (10th Cir. 2005) (discussing *Egerton* in the equitable tolling context); *see generally Munoz v. Bravo*, No. 10-CV-654 RB/WPL, 2010 WL 11618825, at *3 (D.N.M. Oct. 19, 2010) (explaining that the Tenth Circuit has not considered dispositive a petitioner's knowledge of AEDPA within the one-year limitation period). It applied similar reasoning, however, in *Williams v. Estep*, 259 F. App'x 69 (10th Cir. 2007). There, a petitioner sought tolling under § 2244(d)(1)(B) due to an inadequate law library that did not have a copy of the AEDPA. *Williams*, 259 F. App'x at 71. The court noted that despite not having access to the AEDPA, the petitioner filed an untimely petition before learning of the AEPDA. *Id.* at 71–72. Thus, the court reasoned that the petitioner had not identified any causal link between the library's inadequacies and his inability to file timely because the petitioner never asked for a copy of the AEPDA, and he filed his untimely petition before

learning of the AEDPA. *See id.* The court further reasoned that even if the petitioner had access to the AEDPA in the library, it would not have helped him file a timely habeas petition. *See id.* at 72. Accordingly, the court declined to apply statutory tolling. *Id.*

Like the petitioner in *Williams*, Franklin fails to identify any causal link between the libraries' alleged inadequacies and his failure to file a timely habeas petition because, despite reading the AEDPA one-year limitation period, Franklin still failed to file a timely habeas petition. *See id.*; discussion *supra* pages 22–23. Accordingly, Franklin's right to access the courts has not been violated because he has not suffered actual injury.

> b. *Even if Franklin's right to access the courts was violated, such a violation did not prevent him from filing a timely habeas petition.*

To toll the one-year limitation period to file a habeas petition pursuant to § 2244(d)(1)(B), an inmate must show an unlawful state action that *prevented* the filing of a habeas petition. *See Aragon*, 819 F. App'x at 613; *Garcia*, 343 F. App'x at 318–19. Here, even if Franklin's constitutional right to access the courts was violated, the one-year limitation period should not be tolled because this violation did not *prevent* him from filing a habeas petition. *See* discussion *supra* page 22–23. Accordingly, Franklin is not entitled to statutory tolling pursuant to § 2244(d)(1)(B).

**D. The Court recommends denying Franklin's habeas petition as untimely because equitable tolling does not apply.**

For equitable reasons, a court can toll the AEDPA one-year limitation period because the limitation is not jurisdictional, and because equitable principles traditionally govern habeas corpus law. *See, e.g.*, *Holland*, 560 U.S. at 645–49. Equity requires tolling the AEDPA one-year limitation period when (1) the petitioner has been pursuing his rights diligently; and (2) some extraordinary circumstance prevented timely filing. *Id.* at 649 (citation omitted). While the Court finds that

Franklin pursued his rights diligently, Franklin fails to provide an extraordinary circumstance that prevented his timely filing.

"[A] petitioner must diligently pursue his federal habeas claims; a claim of insufficient access to relevant law, such as AEDPA, is not enough to support equitable tolling." *Gibson*, 232 F.3d at 808 (citing *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998)). "[I]gnorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999)). To excuse prompt filing, a petitioner must "allege with specificity the steps he took to diligently pursue his federal claims." *Yang*, 525 F.3d at 930 (internal quotation omitted).

Exceptional circumstances exist "for example, when a prisoner is actually innocent, when an adversary's conduct – or other uncontrollable circumstances – prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period. Simple excusable neglect is not sufficient." *Gibson*, 232 F.3d at 808 (internal citations omitted). Law libraries lacking the AEDPA, however, are not an extraordinary circumstance. *See Miller*, 141 F.3d at 978; *Marsh*, 223 F.3d at 1220; *Bisner v. Clark*, No. 06-4234, 2007 WL 521234, at *1–2 (10th Cir. Feb. 21, 2007); *Forth v. Martinez*, No. 20-CV-832 JB/SCY, 2021 WL 2682826, at *8 (D.N.M. June 30, 2021) ("The Tenth Circuit has also never granted equitable tolling for cases of alleged inadequate law library facilities or staff, and the Court does not believe, based on Tenth Circuit precedent, that the Tenth Circuit would ever grant equitable tolling under these circumstances.") (collecting cases); *Morris v. Romero*, No. 06-CV-1052 MV/SMV, 2012 WL 12894831, at *9 (D.N.M. July 18, 2012) ("The Tenth Circuit has repeatedly declined to find equitable tolling warranted where habeas petitioners allege that the legal facilities

in prisons are inadequate and/or that the law library lacks a copy of AEDPA.") (collecting cases); *see generally Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) (stating that, generally, federal courts allow equitable tolling only "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been tricked or induced by his adversaries misconduct into allowing the filing deadline to pass").

The inability to access a law library or other legal resources, combined with a petitioner's lack of knowledge of legal processes, are "fairly common circumstances, not rare and exceptional ones that would support equitable tolling." *Cardwell v. Allbaugh*, No. 18-CV-199 CVE/FHM, 2018 WL 6075480, at *5 (N.D. Okla. Nov. 20, 2018) (internal quotation omitted) (collecting Tenth Circuit cases). Moreover, lack of library access is less significant when a petitioner can raise issues already raised in a state habeas petition, minimizing the need for further research. *See Coppage v. McKune*, 534 F.3d 1279, 1282 (10th Cir. 2008).

*United States v. Gabaldon*, 522 F.3d 1121 (10th Cir. 2008) provides an example of an extraordinary circumstance sufficient to justify equitable tolling. There, a habeas petitioner presented evidence that, six weeks before the end of the AEDPA one-year limitation period, prison officials confiscated all of his legal documents and refused to return them until the period expired. 522 F.3d 1121, 1124–25. The court reasoned that "a complete confiscation of [the petitioner's] legal materials just weeks before his filing deadline would constitute extraordinary circumstances for the purposes of equitable tolling." *Id.* at 1126.

Franklin explains, and Respondents do not meaningfully dispute, how he pursued his rights diligently. *See* ECF 32 at 8, 18; ECF 33; ECF 42 at 28. Franklin describes, however, "fairly common" inadequate prison libraries, not extraordinary circumstances sufficient to justify

equitable tolling. *Cardwell*, 2018 WL 6075480, at *5. Franklin seeks to apply equitable tolling to his time spent at PNM because "he had no access to the law library and had to rely on an unconstitutional []paging system[,]" which also does not constitute an exceptional circumstance.[16] *See Forth*, 2021 WL 2682826, at *8. Franklin never suffered the "complete confiscation of legal materials just weeks before his filing deadline" [*see Gabaldon*, 522 F.3d at 1126]; rather, after obtaining a court order, Franklin received his legal materials a month after arriving at PNM, and he also received limited caselaw, *see* ECF 33 at 4–5.

Even if the allegedly inadequate law libraries were an exceptional circumstance, Franklin cannot show that they *prevented* timely filing. *See Holland*, 560 U.S. at 649. For the reasons explained above, any inadequacies in the law libraries did not prevent Franklin from filing a timely habeas petition. *See* discussion s*upra* page 22–23. Accordingly, equitable tolling does not apply to the Petition.

### E. The Court recommends denying Franklin's habeas petition as untimely because he has not established entitlement to the actual innocence gateway.

Franklin points to four pieces of evidence that he contends state a claim of actual innocence, which would provide a gateway around the AEDPA one-year limitation period. *See Farrar*, 924 F.3d at 1130 (citing *McQuiggin*, 569 U.S. at 386). Franklin fails to establish entitlement to the actual innocence gateway, however, because his new evidence does not show that "no juror, acting reasonably, would have voted to find [Franklin] guilty beyond a reasonable doubt[,]" had the new evidence been presented at trial. *See Schlup*, 513 U.S. at 329.

---

[16] Franklin makes similar allegations about inadequate law libraries at GCCF. ECF 32 at 18; ECF 33 at 6–7. The Court focuses primarily on Franklin's allegations about his time at PNM because he was not transferred to GCCF until February 8, 2019 [ECF 33 at 6], and his one-year period to file a federal habeas petition expired on January 18, 2019 [ECF 12 at 7]. Any potential extraordinary circumstances that occurred at GCCF could not toll a one-year limitation period that had already expired.

1.  <u>Werner police interview</u>

Franklin first contends that he is entitled to the actual innocence gateway because the statements in the Werner police interview provide Franklin an alibi. ECF 32 at 19–20. Specifically, Franklin has stated that Richard Werner's mother told "police that she saw Franklin on October 31, 2012[,] around 9:00 AM" without Bearden or Enriquez. ECF 42-2 at 159 (Ex. OOO).

The Werner police interview would not prevent a reasonable juror from voting to find Franklin guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at 329. The Werner police interview does not, as Franklin contends, establish that Franklin was "at a completely different location" at the time that Enriquez was shot. *See* ECF 32 at 19–20. Ms. Werner told police that they saw Franklin on the morning of October 31, 2012. ECF 42-2 at 111 (Ex. OOO). The jury heard testimony that Franklin was not at the murder scene that morning: Detective Daniel Torgrimson testified that Franklin, Bearden, and Enriquez stopped at several stores on October 31, 2012, in Albuquerque and Grants. *See* ECF 25-2 at 19–20 (Tr. 18–19); ECF 42-2 at 128 (Ex. PPP) As Judge Eichenwald explained, trial evidence showed that Enriquez was murdered in the morning hours of November 1, 2012, after the three men traveled from Albuquerque to Grants. ECF 42-2 at 155–56 (Ex. TTT). Franklin being at the Werners' house on the morning of October 31, 2012, is not relevant to Franklin's whereabouts in the morning hours of November 1, 2012. A reasonable juror could take as true the Werner police interview and still find Franklin guilty beyond a reasonable doubt. *See McQuiggin*, 569 U.S. at 386. Accordingly, the Werner police interview does not entitle Franklin to the actual innocence gateway.

1. <u>Testimony of Anthony Apodaca</u>[17]

Franklin next asserts that he is entitled to the actual innocence gateway because Anthony Apodaca would testify that Bearden confessed to killing Enriquez and framing Franklin. ECF 32 at 20. While the issue has not been fully briefed, Bearden's confession to killing Enriquez is likely inadmissible hearsay.[18] If it is inadmissible hearsay, Franklin could not use Apodaca's testimony as evidence that Bearden confessed to killing Enriquez and framing Franklin. Franklin could use the inadmissible hearsay only to impeach Bearden's testimony. *See* Fed. R. Evid. 613.

Moreover, if Apodaca testifies, he puts his own credibility at issue. *See United States v. Schuler*, 458 F.3d 1148, 1155 (10th Cir. 2006). A party may impeach a witness by attacking his or her character for truthfulness through certain criminal convictions [Fed. R. Evid. 609], and Apodaca has criminal convictions [*see State of New Mexico v. Anthony Apodaca*, D-1333-CR-2014-223; *State of New Mexico v. Anthony Apodaca*, D-1333-CR-2012-161]. It is unclear whether the Court would determine admissibility of these convictions for impeachment purposes under the

---

[17] Franklin claims that Anthony *Apodoca* is prepared to testify that Bearden admitted to killing Enriquez and framing Franklin for the murder. ECF 32 at 20. Elsewhere, this potential witness is referred to as Anthony *Apodaca*. *See* ECF 42 at 33. The Court has not found records on an inmate named Anthony Apodoca, but it has found records on an inmate named Anthony Apodaca. Accordingly, the Court adopts the spelling used by Respondents.

[18] Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801. Unless an exception applies, hearsay is not admissible in court. Fed. R. Evid. 802. Bearden's statement to Apodaca is hearsay. It is a statement Bearden made out of court that Franklin wants to offer as proof of its truth. *See* ECF 15 at 2; ECF 32 at 20. Thus, Bearden's confession could only be admitted if an exception to the rule against hearsay applies. *See* Fed. R. Evid. 802. The information before the Court points to only one applicable exception, specifically the statement against interest exception, which requires that Bearden be unavailable to testify. *See* Fed. R. Evid. 804(b)(3). This exception makes admissible any hearsay statements by unavailable declarants that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability[.]" Fed. R. Evid. 804(b)(3)(A). Even if Bearden's confession is a statement against interest, it only falls within the exception if Bearden were unavailable to testify. For the purposes of the actual innocence gateway determination, the Court will consider the slim-but-not-impossible chance that Bearden's statement would be admissible for its truth.

standard in Rule 609(a)(1)(A), Rule 609(a)(2), or Rule 609(b).[19]

A high likelihood exists that (1) jurors would be instructed to consider Apodaca's testimony only to impeach Bearden's testimony; and (2) the state would introduce Apodaca's convictions to impeach his testimony. *See supra* notes 18–19. Even if Apodaca's testimony were admissible to tend to show that Franklin did not kill Enriquez, reasonable jurors could differ as to whether they find Bearden or Apodaca more credible. A reasonable juror could still vote to find Franklin guilty beyond a reasonable doubt even had Apodaca testified at trial. *See Schlup*, 513 U.S. at 329. Accordingly, the testimony of Anthony Apodaca does not entitle Franklin to the actual innocence gateway.

### 2. Enriquez's Phone Records

Third, Franklin asserts that he is entitled to the actual innocence gateway because Enriquez's (the victim's) phone records contradict Bearden's testimony that he did not communicate with Enriquez before the events leading to the murder. ECF 32 at 20. The pertinent

---

[19] Apodaca pled guilty to residential burglary, robbery, and aggravated battery on November 25, 2014. *See* D-1333-CR-2012-161; D-1333-CR-2014-223. Apodaca failed to appear for a probation violation arraignment on November 16, 2017, meaning he was released prior to that date. *See* D-1333-CR-2012-161; D-1333-CR-2014-223. Thus, the ten-year limitation under Rule 609(a) for the residential burglary, robbery, and aggravated battery began to run at some point between November 24, 2014, and November 16, 2017, and may have already expired. *See United States v. DeLeon*, 322 F. Supp. 3d 1189, 1192 n.2 (D.N.M. 2018) (collecting cases) (ten-year window under Rule 609(a) is calculated from the date that the witness was released from prison, even if the witness was released on probation that is eventually revoked). If presented less than ten years from his release, evidence of Apodaca's residential burglary, robbery, and aggravated battery would be admissible to impeach Apodaca under the more lenient standards in Rule 609(a)(1)(A) or Rule 609(a)(2). If presented more than ten years after his release, evidence of Apodaca's residential burglary, robbery, and aggravated battery convictions would be admissible to impeach Apodaca under the stricter standards of Rule 609(b).

Respondents incorrectly assert that residential burglary is a per se crime of dishonesty that is subject to the even more lenient standard in Rule 609(a)(2). ECF 24 at 21. A crime is a per se crime of dishonesty if an element of the offense includes deceitfulness or untruthfulness. *United States v. Mejia-Alarcon*, 995 F.2d 982, 988–90 (10th Cir. 1993). The residential burglary statute that Apodaca pled guilty to does not contain an element that requires deceitfulness or untruthfulness. *See* NMSA § 30-16-3(A). Apodaca's residential burglary would, however, become a crime of dishonesty if Apodaca committed the crime using fraudulent or deceitful conduct. *See United States v. Chaco*, 801 F. Supp. 2d 1217, 1224 (D.N.M. 2011) (quoting *United States v. Seamster*, 568 F.2d 188, 191 (10th Cir. 1978)).

part of Enriquez's phone records span October 28, 2012, through November 1, 2012. ECF 24-1 at 401–09 (Ex. NN). They show that between 10:16 p.m. and 11:21 p.m. on October 30, 2012, Enriquez and Bearden exchanged thirty-four text messages and one call. *Id.* Bearden testified that he had neither met Enriquez nor been to his apartment before October 30, 2012, and that Franklin, with Bearden in the car, drove to pick up Enriquez the night of October 30, 2012. ECF 25-3 at 51–53 (Tr. 50–52). Additionally, Franklin testified that he drove with Bearden to pick up Enriquez on the night of October 30, 2012, with Enriquez providing directions to his apartment. ECF 25-4 at 41 (Tr. 40). As Respondents highlighted, Franklin may have asked Enriquez to send directions to Bearden, the passenger. ECF 24 at 20. Accordingly, Bearden's communications with Enriquez on the night of night of October 30, 2012, do not contradict his testimony that he did not know Enriquez until that night.

Even if Bearden lied about knowing Enriquez before October 30, 2012, a reasonable juror could still find Franklin guilty beyond a reasonable doubt. Bearden's testimony implies that Franklin killed Enriquez, in part, because Enriquez owed Franklin money. *See* ECF 25-3 at 53 (Tr. 52). Bearden's familiarity with Enriquez is not relevant to whether Enriquez owed Franklin money. Thus, a reasonable juror could credit Bearden's testimony even if Franklin introduced the phone records to impeach Bearden.

Franklin also contends that the phone records are important because they show no communication between Franklin and Enriquez. ECF 32 at 20. Enriquez's phone records cover only five days. *See* ECF 24-1 at 401–09 (Ex. NN). Information that Franklin and Enriquez were not communicating over the phone in the days leading up to the murder would not prevent a reasonable juror from finding Franklin guilty beyond a reasonable doubt. *See Schlup*, 513 U.S. at

329. Accordingly, Enriquez's phone records do not entitle Franklin to the actual innocence gateway.

### 3. Expert Testimony on Bullet Trajectory

Franklin next asserts that he is entitled to the actual innocence gateway because expert testimony on bullet trajectory would make Bearden's version of the shooting inherently improbable. ECF 32 at 20. Franklin highlighted that the autopsy shows Enriquez suffered two gunshot wounds to the front and two to the back, and Bearden testified to hearing one gunshot followed by three in quick succession. ECF 42-1 at 345 (Ex. VV). Franklin would provide expert testimony that the three gunshots in quick succession would have to come from the same direction, and that this cannot be true if Franklin was shot twice from the front and twice from the back. *Id.*; ECF 32 at 20. According to Franklin, for Bearden's testimony to be truthful, the final three shots would have to come from the same direction. ECF 42-1 at 345 (Ex. VV); ECF 32 at 20.

As an initial matter, the Court notes that Franklin does not provide an expert willing to testify as to bullet trajectory on his behalf. Thus, Franklin does not have "new reliable evidence" that was not presented at trial. *See Schlup*, 513 U.S. at 324. Moreover, a reasonable juror could still find Franklin guilty beyond a reasonable doubt because expert testimony on bullet trajectory is unnecessary and would not discredit Bearden's testimony. *See McQuiggin*, 569 U.S. at 386. Bearden testified that he heard, but did not see, the final three gunshots, and he was unsure how much time passed between each. *See* ECF 25-3 at 79–81 (Tr. 78–80). By way of example, the force of the second shot could have rolled Enriquez's body over, or Franklin could have rolled Enriquez's body over after the first shot. Additionally, the exact direction that Enriquez was shot from has minimal evidentiary value because Franklin was found guilty beyond a reasonable doubt without a

witness seeing the final three gunshots. Accordingly, the desire to present expert testimony on bullet trajectory does not entitle Franklin to the actual innocence gateway. *See McQuiggin*, 569 U.S. at 386.

### 4.  Totality of the Evidence

A reasonable juror considering Franklin's alleged new evidence alongside the evidence presented at trial could still find Franklin guilty beyond a reasonable doubt. *Fontenot*, 4 F.4th at 1052. Respondents summarized the evidence relied upon at trial to convict Franklin:

> (1) Franklin's story that Fernando [Enriquez], a stranger to Franklin at the time, was willing to provide Franklin the money to pay off his bills by taking credit card advances and purchasing and returning store merchandise for cash;[20] (2) Franklin's shifting accounts about whether Fernando did or did not return to Grants with him and Bearden, as well as Franklin's hard refusal to tell Officer Lucero where he had dropped Fernando off;[21] and (3) Franklin's overall non-credible testimony, his admission that his interview with Nathan Lucero was a fabricated story, and his—at best—misrepresentation to the jury about his drug use.[22]
>
> Additional evidence included that (4) Fernando's wallet and cards were found in Franklin's car;[23] (5) store receipts for items found at Franklin's home showed that Franklin was using Fernando's cards throughout November 2012;[24] (6) what was very likely the murder weapon was found at the home of a friend of Franklin's sister, if not in the sister's vehicle;[25] (7) Franklin had told his mother to destroy the items bought with Fernando's cards and to move firearms;[26] and (8) Franklin made other statements to his mother indicative of consciousness of guilt.[27]

---

[20] ECF 25-4 at 40–42 (Tr. 39–41).

[21] ECF 25-4 at 61 (Tr. 60); ECF 25-4 at 65 (Tr. 64).

[22] ECF 25-4 at 41 (Tr. 40); ECF 25-4 at 55 (Tr. 54); ECF 25-4 at 58–61 (Tr. 57–60).

[23] ECF 25-2 at 45 (Tr. 44); ECF 25-3 at 9–12 (Tr. 8–11).

[24] ECF 25-1 at 178 (Tr. 177); ECF 25-2 at 25–28 (Tr. 24–27); ECF 25-2 at 45–46 (Tr. 44–45); ECF 25-2 at 138 (Tr. 137).

[25] ECF 42-2 at 126 (Ex. PPP); ECF 42-2 at 147 (Ex. RRR); ECF 25-3 at 20–22, 25–30 (Tr. 19–21, 24–29).
[26] ECF 25-4 at 50–51 (Tr. 49–50); ECF 25-4 at 63 (Tr. 62).

[27] ECF 25-3 at 112–16 (Tr. 111–15).

ECF 24 at 19–20 (altered to include footnote citations to record evidence). Franklin's new evidence attacks the margins of the case against him while avoiding the state's strong evidence from Bearden and law enforcement. A reasonable and properly instructed juror considering all the evidence could find still Franklin guilty beyond a reasonable doubt; therefore, Franklin is not entitled to the actual innocence gateway. *See Fontenot*, 4 F.4th at 1052; *Schlup*, 513 U.S. at 329.

### F.  The Court recommends denying the Petition on its merits.

Habeas courts have discretion to rule on the merits of procedurally complex habeas petitions when those petitions may be disposed of in straightforward fashion on substantive grounds. *Revilla v. Gibson*, 283 F.3d 1203, 1210–11 (10th Cir. 2002). Given the litany of procedural arguments surrounding this Petition, and the straightforward substantive claims raised therein, the Court recommends that the presiding judge rule on the merits as follows. *See id.*

### 1.  Ground One: Prosecutorial Misconduct

Prosecutorial misconduct is a cognizable claim for habeas relief and is reviewed for violation of a specific constitutional right, or for a violation of due process. *Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005) (citing *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir. 1994), *cert. denied*, 515 U.S. 1122 (1995); *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002). Prosecutorial misconduct violates due process and entitles a petitioner to habeas relief when "the conduct complained of is so egregious as to render the entire proceedings against the defendant fundamentally unfair." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (collecting cases). Courts "consider the totality of the circumstances, evaluating the prosecutor's conduct in the context of the whole trial." *Cummings v. Evans*, 161 F.3d 610, 619 (10th Cir. 1998) (internal quotation omitted). "The ultimate question

is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006).

> a. *Failure to disclose Enriquez's phone records and Werner police interview.*

A habeas petitioner can succeed on a prosecutorial misconduct theory that the prosecutor failed to disclose evidence "by establishing that the government suppressed evidence material to the defense while acting either intentionally or inadvertently." *Douglas v. Workman*, 560 F.3d 1156, 1192 (10th Cir. 2009) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)); *see Brady v. Maryland*, 373 U.S. 83, 86 (1963).[28]  A petitioner must also show that there existed a reasonable probability, sufficient to undermine confidence in the outcome, that the undisclosed evidence would have prevented a guilty verdict. *Kirby v. King*, 460 F. App'x 782, 787 (10th Cir. 2012) (citing *United States v. Bagley*, 473 U.S. 677, 682 (1985)).

New Mexico State District Judge George P. Eichenwald considered Franklin's *Brady* claim and held that Enriquez's phone records and the Werner police interview "probably would not change the result if a new trial was granted[,]" and he referred to his discussion of these documents in his denial of Franklin's Second Motion for New Trial. ECF 42-2 at 213 (Ex. YYY). There, Judge Eichenwald said of the Werner police interview, "[t]he whereabouts of [Franklin] on the morning of October 31, 2012, are not exculpatory or relevant, and would not change the outcome of the trial[,]" because evidence presented at trial showed that Enriquez was murdered in the morning hours of November 1, 2012. ECF 42-2 at 155–56 (Ex. TTT). In the same order, Judge Eichenwald refused to revisit Enriquez's phone records because the New Mexico Thirteenth

---

[28] Franklin does not cite to *Brady* in his Petition, but he made similar arguments pursuant to *Brady* elsewhere. *See* ECF 42-1 at 449–52 (Ex. BBB); ECF 42-2 at 171–72 (Ex. WWW). Thus, construing the Petitioner liberally, the Court reads it to assert a *Brady* violation.

Judicial District Court had issued orders on them twice, and the New Mexico Supreme Court denied certiorari three times. *Id.* at 155. In one of the orders referenced by Judge Eichenwald, he found that Enriquez's phone records could have been discovered by Franklin before trial, and that they "would not have changed the result at trial. The jury returned a verdict of guilty relatively quickly, based on the overwhelming evidence of [Franklin's] guilt." ECF 42-1 at 286 (Ex. GG); *see also supra* notes 20–27 and accompanying text. Judge Eichenwald has also reasoned that the prosecution disclosed the phone records before trial. ECF 42-2 at 213 (Ex. YYY).

Franklin fails to show that Judge Eichenwald's assessments were in some way contrary to federal law. *See* § 2254(d). Additionally, this Court agrees with Judge Eichenwald that neither the phone records nor the police interview would have changed the result of Franklin's trial. At most, the phone records show that Bearden and Enriquez communicated via cell phone in the hour before they met in person, and that Franklin and Enriquez did not communicate over the phone between October 28, 2012, and Enriquez's death. *See* ECF 24-1 at 402–09 (Ex. NN). At most, the Werner police interview proves Franklin's whereabouts on the morning of October 31, 2012, many hours before Enriquez was killed. *See* ECF 42-2 at 155–56 (Ex. TTT). These two documents do not create a reasonable probability, sufficient to undermine confidence in the jury's verdict, that Franklin would not have been convicted if the documents were disclosed. *See Kirby*, 460 F. App'x at 787. Moreover, because these documents can be read as consistent with other evidence presented at trial, failure to disclose them did not render the entire proceedings against Franklin fundamentally unfair. *See Smallwood*, 191 F.3d at 1275. In any event, this Court defers to Judge Eichenwald's conclusion that the prosecution disclosed the phone records before trial. *See Simpson*, 912 F.3d at 562. Because Franklin offers no argument showing these state court decisions

37

were contrary to federal law, much less unreasonable, the Court defers to the state court conclusions that neither document alleged to have been withheld would have changed the result of Franklin's trial. *See Simpson*, 912 F.3d at 562.

### b.  Failure to correct Bearden and Lucero's testimony

The Due Process Clause imposes a duty on prosecutors not to knowingly solicit false evidence and to correct testimony that the prosecutor knows is false. *Simpson*, 912 F.3d at 575 n.17 (internal quotations and alterations omitted) (citing *Napue v. Illinois*, 360 U.S. 264, 269–70 (1959)); *see Smith v. Roberts*, 115 F.3d 818, 820 n.2 (10th Cir. 1997). A prosecutor violates the Due Process Clause by failing to correct false testimony only when the testimony is material. *United States v. Garcia*¸ 793 F.3d 1194, 1207 (10th Cir. 2015) (citing *Napue*, 360 U.S. at 260). False testimony is material unless failure to disclose its falsehood would be harmless beyond a reasonable doubt. *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 680 (1985)).

In summarily dismissing Franklin's state court habeas petition, Judge Eichenwald held that the prosecution did not engage in misconduct by failing to correct Lucero because "this information was brought out during the direct-examination of [Franklin] during which [Franklin] testified that he denied involvement over fifty (50) times during the interview." ECF 42-1 at 488 (Ex. CCC). Franklin contends that the state failed to correct Officer Nathan Lucero's false testimony that Franklin never denied killing Enriquez when, according to Franklin, he told Lucero that he did not kill Enriquez over fifty times. ECF 1 at 17. Additionally, Franklin insists that the state failed to correct Bearden's false testimony that he never met Enriquez. *Id.*

Franklin fails to show that Judge Eichenwald's holding was contrary to federal law. *See* § 2254(d). Initially, it was defense counsel, not the prosecution, who solicited the testimony that

Franklin insists is false. ECF 25-2 at 146 (Tr. 145); *see Simpson*, 912 F.3d at 575 n.17 (stating that a *prosecutor* has a duty not to solicit false evidence). Further, Franklin provides no evidence that the prosecution *knowingly* solicited false testimony. *See Simpson*, 912 F.3d at 575 n.17. Moreover, Officer Lucero's testimony that Franklin never denied killing Enriquez is not material because it is harmless beyond a reasonable doubt. *See Garcia*, 793 F.3d at 1207. Franklin's trial counsel questioned Franklin about the interview, and Franklin corrected the allegedly false testimony. ECF 25-4 at 48 (Tr. 47). Additionally, the prosecution did not knowingly solicit false testimony from Bearden because, as previously discussed, Enriquez's phone records, without more, do not contradict Bearden's testimony. *See* discussion *supra* pages 31–32. In any event, the prosecution's conduct did not violate Franklin's due process rights because it did not render the entire proceedings against Franklin fundamentally unfair. *See Smallwood*, 191 F.3d at 1275.

### c. Improperly playing and mischaracterizing evidence of phone calls and physical evidence.

A prosecutor's introduction of inflammatory evidence warrants habeas relief only when it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (internal quotation omitted) (quoting *Donnelly*, 416 U.S. at 643). A trial becomes infected with unfairness as to make the resulting conviction a denial of due process when the prosecutor manipulates or misstates the evidence or implicated a specific right of the petitioner, such as the right to counsel or to remain silent. *See id.* at 181–82. The Court must consider the record as a whole to determine if a prosecutor's inflammatory mischaracterization of evidence so infected the trial with unfairness. *See id.*; *Jackson v. Conway*, 763 F.3d 115, 146 (2d Cir. 2014) (collecting cases).

Judge Eichenwald's summary denial of Franklin's state court habeas petition did not

address Franklin's argument that the prosecution's presentation of the phone calls between Franklin and his mother amounted to misconduct. *See* ECF 42-1 at 456 (Ex. BBB); ECF 42-1 at 482–92. (Ex. CCC). The Court presumes Judge Eichenwald rejected the argument on its merits. *See Johnson v. Williams*, 568 U.S. 289, 298 (2013). Here, Franklin contends that the prosecution misinterpreted irrelevant and inflammatory phone calls between Franklin and his mother, and that the state should have called Franklin's mother as a witness to clarify the meaning of the calls. ECF 1 at 18. Additionally, Franklin argues that the prosecution "misrepresented [Enriquez's] credit cards. The state falsely claimed they were discovered in Franklin's wallet[.]"[29] *Id.*

The evidence cited by Franklin did not so infect the trial with unfairness as to make his resulting conviction a denial of due process. *See Darden*, 477 U.S. at 181. The calls between Franklin and his mother related to Franklin's destruction of evidence and consciousness of guilt because Franklin asked his mother to hide his guns and items purchased with Enriquez's credit card. ECF 25-4 at 62–64 (Tr. 61–63). If the contents of these phone calls were misrepresented, Franklin himself could have called his mother as a witness to clarify the meaning of the calls. Additionally, the prosecution did not misrepresent Enriquez's credit cards because Franklin admitted that Enriquez's credit cards were found in Franklin's wallet [ECF 25-4 at 61 (Tr. 60)]; therefore, it was not improper for the prosecution to present them as such.

At bottom, considering the strength of the case against Franklin [*supra* notes 20–27 and accompanying text (summarizing the evidence against Franklin with record citations)], and considering Judge Eichenwald's findings that the alleged prosecutorial misconduct had minimal

---

[29] As far as the Court can tell, the Petition before the Court is the first time that Franklin raises this argument. The Court, however, exercises its discretion under *Revilla* to address it on the merits because it is straightforward. *See Revilla*, 283 F.3d at 1210–11.

impact, the prosecution did not "render the entire proceedings against [Franklin] fundamentally unfair." *See Smallwood*, 191 F.3d at 1275. The Court harbors no doubt that "the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *See Bland*, 459 F.3d at 1024. Because Franklin offers no argument showing these state court decisions were contrary to federal law, much less unreasonable, the Court defers to the state court conclusions that none of the alleged prosecutorial misconduct, if it had not occurred, would have changed the result of Franklin's trial. Accordingly, Franklin is not entitled to habeas relief on his prosecutorial misconduct claim.

## 2. Ground Two: Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees Petitioner the right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). For federal habeas petitions brought under 28 U.S.C. § 2254(d), *Strickland* is clearly established federal law. *See Williams*, 529 U.S. at 390. To succeed under *Strickland*, Petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687–88. Courts "may address the performance and prejudice components in any order, but need not address both if [petitioner] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

To establish the first prong, a petitioner must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Cullen*, 563 U.S. at 189 (2011) (quoting *Strickland*, 466 U.S. at 690). This requires the petitioner to establish that the "attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the second prong, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, . . . and when the two apply in tandem, review is doubly so." *Howell v. Trammell*, 728 F.3d 1202, 1223 (10th Cir. 2013) (quoting *Harrington*, 562 U.S. at 105) (internal citations and quotations omitted). "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### a. *Ed Poore's testimony and recovered guns.*

A petitioner can only raise the involuntary nature of someone else's statement if the use of that statement violated the petitioner's due process rights to a fair trial. *See United States v. Leveille*, 668 F. Supp. 3d 1206, 1209 (D.N.M. 2023) (citing *United States v. Dowell*, 430 F.3d 1100, 1107 (10th Cir. 2005)). A statement is involuntary if the government overbears the speaker's will and critically impairs the speaker's capacity for self-determination. *See United States v. McCullah*, 76 F.3d 1087, 1101 (10th Cir. 1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973)). To determine involuntariness, Courts consider the speaker's "age, intelligence, and education, the length of detention and questioning, the use or threat of physical punishment,

whether *Miranda* warnings were given, the accused's physical and mental characteristics, the location of the interrogation, and the conduct of police officers." *United States v. Gonzales*, 164 F.3d 1285, 1289 (10th Cir. 1999).

A promise of leniency is but one factor to consider when determining the voluntariness of a statement. *See United States v. Perez*, – F.4th –, No. 24-3015, 2025 WL 223678, at *17 (10th Cir. Jan. 17, 2025) (citing *United States v. Young*, 964 F.3d 938, 944 (10th Cir. 2020)). Moreover, while threats involving children can render a statement involuntary, *Tierra Blanca Ranch High Country Youth Program v. Gonzales*, No. 15-CV-850 MCA/KRS, 2018 WL 2464495, at *13 (D.N.M. June 1, 2018) (collecting cases), statements explaining the consequences of illegal acts on child custody do not render statements involuntary, *United States v. Ponce Munoz*, 150 F. Supp. 2d 1125, 1135 (D. Kan. 2001) (citing *United States v. Moore*, 79 F.3d 1142 (4th Cir. 1996)).

Judge Eichenwald held that Franklin's trial counsel did not provide ineffective assistance by failing to seek suppression of evidence found as a result of Lacey Franklin's allegedly involuntary statements because Franklin "does not have standing to assert a suppression motion regarding statements or searches of third parties. It is probable that such a motion was not filed by trial counsel due to counsel's knowledge that the motion would be groundless and unsuccessful." ECF 42-1 at 490 (Ex. CCC). Franklin contends that the police promised Franklin leniency and threatened Lacey's custody over her children to solicit involuntary statements from Lacey, where Lacey admitted that she and her friend Ed Poore hid guns for Franklin at Poore's house, and that evidence found as a result of these statements was introduced against Franklin at trial. ECF 1 at 19; *see* ECF 42-2 at 133 (Ex. QQQ).

While the Court finds that Judge Eichenwald erred by failing to consider whether Franklin's

43

own due process rights gave him standing to challenge Lacey's allegedly involuntary statements, the Court also finds that trial counsel's failure to seek suppression here does not entitle Franklin to habeas relief because a reasonable argument exists that trial counsel satisfied *Strickland's* deferential standard. *See Harrington*, 562 U.S. at 105. Franklin has standing to assert that Lacey's statements were involuntary to the extent that the introduction of her involuntary statements violated his due process rights to a fair trial. *See Dowell*, 430 F.3d at 1107. The Petition provides two facts in support of involuntariness – police promised to show Franklin leniency, and police threatened her custody of Lacey's children – neither of which has evidentiary support in the record. ECF 1 at 19. Assuming these two facts are true, they do not prove that Lacey Franklin's statements were involuntary because Franklin has not provided information on the number of other factors courts consider when determining the voluntariness of a statement. *See Gonzalez*, 164 F.3d at 1289. Moreover, a promise of leniency for Franklin is unlikely to so coercive as to impair Lacey's capacity for self-determination because she is not the beneficiary of the promise. *See Young*, 964 F.3d at 944–45. Additionally, police informing Lacey that keeping and hiding a murder weapon jeopardizes her custody of her children would not render her statement involuntary. *See Ponce Munoz*, 150 F. Supp. 2d at 1135; *see also* ECF 42-2 at 113 (Ex. QQQ) (Lacey brought her child with her to deliver Franklin's guns to Poore's house).

Franklin fails to overcome the strong presumption that his trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[,]" *see Cullen*, 563 U.S. at 189, because a "reasonable argument [exists] that counsel satisfied *Strickland's* deferential standard[,]" *see Harrington*, 562 U.S. at 105. Franklin's trial counsel could have observed the totality of the circumstances surrounding Lacey's statements and concluded that

a suppression motion based on Franklin's due process rights to a fair trial would likely fail. *See id.* Further, Franklin fails to establish the second prong of *Strickland* because, even without Ed Poore's testimony or the guns, the Court has confidence that a jury would still return a guilty verdict given the weight of the evidence against Franklin at trial. *See Strickland*, 466 U.S. at 694; *supra* notes 20–27 and accompanying text (summarizing the evidence against Franklin with record citations). Accordingly, Franklin's argument that his trial counsel was ineffective for failing to seek suppression of Ed Poore's testimony and the discovered guns does not entitle him to habeas relief.

### b. *Franklin's police statement*

Franklin next argues that his trial counsel was ineffective for failing to seek suppression of his own allegedly involuntary statements that he claims were presented at trial in violation of his Fifth and Sixth Amendment rights. ECF 1 at 19. Judge Eichenwald disagreed, writing:

> "A review of the testimony shows that [Franklin] was Mirandized and waived Miranda. [Franklin] testified at trial. His prior statements during the police interview would have been relevant to cross-examination. [Franklin] previously states in this Petition that it was error for the State to fail to admit the police interview that he how asserts should have been suppressed. It is reasonable that Defense strategy could have dictated counsel's failure to challenge the portions of the interview that were admitted through testimony as well as the fact that the interview in its entirety was not admitted."

ECF 42-1 at 490 (Ex. CCC).

Judge Eichenwald's findings are entitled to deference because Franklin has not shown that they are unreasonable. *See Simpson*, 912 F.3d at 562. Additionally, Franklin fails to overcome the presumption that his trial counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" by failing to seek suppression of his statements given to police. *See Cullen*, 563 U.S. at 189. The jury was presented with evidence that Franklin waived his *Miranda* rights. ECF 25-2 at 128 (Tr. 127). It is a reasonable exercise of professional

judgment for a defense attorney not to object to the admission of statements made after a *Miranda* waiver. *See Cullen* 563 U.S. at 189. Accordingly, Franklin's argument that his trial counsel was ineffective for failing to seek suppression of Franklin's statements made to police does not entitle him to habeas relief.

### c. Failure to ensure that Franklin was present for depositions.

Franklin argues that his trial counsel was ineffective because "counsel did not allow him to be present for any pre-trial depositions." ECF 1 at 19. Respondents acknowledge that Judge Eichenwald did not address this argument. ECF 42 at 44 n.17. Respondents point out, however, that *Johnson v. Williams*, 568 U.S. 289 (2013) instructs this Court to presume that Judge Eichenwald considered Franklin's argument and rejected it on the merits. *See* 568 U.S. at 298. The Court agrees with the Respondents. *See id.* Moreover, Franklin's argument on this point amounts to thirteen words that form one conclusory sentence. *See* ECF 1 at 19. Franklin fails to establish the second prong of *Strickland* because he provides no argument that the result of his trial would have been different if he was present for pre-trial depositions. *See Strickland*, 466 U.S. at 694. Accordingly, Franklin's argument that his trial counsel was ineffective for failing to ensure Franklin's presence at pre-trial depositions does not entitle Franklin to habeas relief.

### d. Failure to investigate

Franklin next argues that his trial counsel was ineffective for failing to investigate (1) the phone confiscated at Bearden's mother's house; (2) Enriquez's phone records; (3) the shotgun shells confiscated from Bearden's mother's house; (4) topics to be covered in Franklin's testimony; and (5) the autopsy report. ECF 1 at 20. Judge Eichenwald already rejected this argument on both *Strickland* prongs. ECF 42-2 at 213–14 (Ex. YYY). Judge Eichenwald, applying *Strickland*,

considered this failure to investigate argument – he construed it as a failure-to-use-certain-evidence argument after reasoning that this evidence was likely turned over the Defendant – and declined to second guess counsel's strategic decisions when applying the first *Strickland* prong. ECF 42-2 at 213–14 (Ex. YYY).

Judge Eichenwald reasonably applied *Strickland*. Franklin offers no facts to overcome the presumption that his trial counsel exercised reasonable professional judgment when deciding which pieces of evidence warranted further investigation or use at trial and which did not. *See Cullen* 563 U.S. at 189. Moreover, given the weight of the evidence against Franklin, it is unlikely that the result of his trial would have changed if trial counsel thoroughly investigated the evidence Franklin wanted him to investigate. *See Strickland*, 466 U.S. at 694. Accordingly, Franklin's argument that his trial counsel was ineffective for failing to investigate certain pieces of evidence does not entitle him to habeas relief.

### e. Failure to request proper instructions

Franklin insists that his trial counsel was ineffective for failing to request a jury instruction on the impact of Franklin's lack of motive. ECF 1 at 20. Franklin also argues that his trial counsel was ineffective for failing to request an accomplice instruction. *Id.* Judge Eichenwald held that Franklin's trial counsel was not ineffective for failing to request an instruction on second degree murder because failure to request a lesser instruction could dilute an "all or nothing" defense tactic. ECF 42-1 at 491 (Ex. CCC).

The Court defers to Judge Eichenwald's finding because Franklin has not shown how it is unreasonable. *See Williams*, 529 U.S. at 407–08. Franklin fails to establish that failure to request these specific instructions amounts to incompetence under "prevailing professional norms,"

because, as Judge Eichenwald highlighted, requesting an accomplice instruction could undermine an all-or-nothing defense strategy. *See Harrington*, 562 U.S. at 105. Additionally, it is not incompetence under "prevailing professional norms" to not seek a jury instruction on motive because motive is not an element of Franklin's murder conviction. *See id.* New Mexico defines willful and deliberate first degree murder as "the killing of one human being by another without lawful justification or excuse, by any of the means with which death may be cause: (1) by any kind of willful, deliberate and premeditated killing . . ." NMSA § 30-2-1. The motive underlying the killing is not relevant to any element of the offense; therefore, it is a reasonable exercise of professional judgment not to request a jury instruction on motive. *See Cullen*, 563 U.S. at 189.

At bottom, Franklin offers no argument showing that Judge Eichenwald's decisions were contrary to federal law, much less unreasonable. Consequently, the Court defers to the state court conclusions that the alleged instances of ineffective assistance of counsel, if they had not occurred, would have changed the result of Franklin's trial. Accordingly, Franklin is not entitled to habeas relief on his ineffective assistance of counsel claim.

### f.  *Cumulative Error*

Franklin insists that the cumulative impact of the alleged instances of prosecutorial misconduct and ineffective assistance of counsel entitles him to habeas relief. ECF 1 at 20. Franklin made the same argument in his state court habeas petition [ECF 42-1 at 457–58, 469 (Ex. BBB)], but Judge Eichenwald did not address it directly [*see* ECF 42-1 at 482–92 (Ex. CCC)]. The Court presumes that he considered and rejected on the merits the argument that the cumulative impact of the alleged prosecutorial misconduct and ineffective assistance of counsel warranted relief. *See Johnson*, 568 U.S. at 298.

"A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Cargle v. Mullin*, 317 F.3d 1196, 1206–07 (10th Cir. 2003) (quotation omitted). Franklin's prosecutorial misconduct and ineffective assistance of counsel claims require a full examination of the record to determine whether their cumulative effect would have changed the results at Franklin's trial. *See Le*, 311 F.3d at 1022–23; *Strickland*, 466 U.S. at 694. Had the prosecutor and Franklin's attorney acted in accordance with Franklin's wishes, his trial would have likely resulted in the same guilty verdict. Franklin's prosecutorial misconduct and ineffective assistance arguments focus on legally dubious motions that Franklin wishes his attorney had filed and evidence that a jury would likely assign minimal probative value. Franklin fails to address, much less neutralize, the strong evidence that the state presented against him at trial. *See supra* notes 20–27 and accompanying text (summarizing the evidence against Franklin with record citations). Any error arising from each specific instance of alleged prosecutorial misconduct or alleged ineffective assistance of counsel was harmless, and, after considering the record evidence, the court finds that any error arising from the collective instances of alleged prosecutorial misconduct or ineffective assistance of counsel would also be harmless. *See Cargle*, 317 F.3d at 1206–07.

### 3.  Ground Three: Newly Discovered Evidence

"[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Herrera v. Collins*¸ 506 U.S. 390, 400 (1993) (collecting cases). As such, newly discovered evidence relevant to the guilt of a state prisoner is not a ground for federal habeas relief unless the petitioner asserts an independent constitutional

violation underlying the state criminal proceeding. *Case v. Hatch*, 731 F.3d 1015, 1034 (10th Cir. 2013) (quoting *Herrera*, 506 U.S. at 400); *Clayton v. Gibson*, 199 F.3d 1162, 1180 (10th Cir. 1999). A claim of newly discovered evidence is actionable only if it demonstrates a fundamental miscarriage of justice sufficient to entitle the petitioner to the actual innocence gateway that would allow a court to hear a procedurally barred claim on the merits. *Clayton*, 199 F.3d at 1180 (citing *Herrera*, 506 U.S. at 404).

Here, the Court determined that Franklin's newly discovered evidence arguments fail to establish entitlement to the actual innocence gateway for procedurally barred claims. *See* discussion *supra* pages 28–35. Franklin's newly discovered evidence argument therefore does not state a claim for habeas relief. *See Case*, 731 F.3d at 1034; *Clayton*, 119 F.3d at 1180.

### 4. Ground Four: Insufficient Evidence

Franklin contends that insufficient evidence exists to support his conviction because (1) the autopsy report makes Bearden's testimony inherently improbable; and (2) the state failed to establish the deliberate or express malice necessary for a first-degree murder conviction. ECF 1 at 22. Judge Eichenwald rejected Franklin's insufficient evidence arguments, reasoning first that it is up to the jury to weigh Bearden's credibility against the autopsy report, and reasoning second that a reasonable jury could have found that Franklin had the deliberate intent to kill Enriquez based on Bearden's testimony, the autopsy report, and the circumstances surrounding the killing. ECF 42-1 at 484 (Ex. CCC).

An allegation of insufficient evidence to support a conviction is a cognizable claim for habeas relief. *Jackson v. Virginia*, 443 U.S. 307, 320–21 (1979). Habeas courts accept the jury's evidentiary determinations so long as they are "within the bounds of reason" and only question the

evidentiary rulings of state courts if the petitioner can show that they rendered the trial fundamentally unfair. *Delgado v. Barreras*, No. 97-2007, 1997 WL 785525, at *3 (10th Cir. Dec. 22, 1997) (internal quotations and citations omitted). A petitioner asserting insufficient evidence must make two showings: (1) that no rational trier of fact could have agreed with the jury; and (2) that the state court reviewing and rejecting the insufficient evidence argument was objectively unreasonable. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (citing *Cavazos v. Smith*, 565 U.S. 1, 4 (2011)).

With regards to Bearden's testimony about the gunshots, Franklin fails to show that no rational trier of fact could have agreed with the jury. *See Coleman*, 566 U.S. at 651. Bearden testified to seeing Franklin shoot Enriquez in the neck with a shotgun at close range. ECF 25-3 at 61 (Tr. 60). Bearden then testified to turning away, hearing Enriquez's body fall, and then hearing three additional gun shots. *Id.* at 62 (Tr. 61). The autopsy report showed that Enriquez suffered a shotgun wound to his lower jaw, and then suffered two shotgun wounds to the back and one to the chest, all at close range. ECF 25–4 at 15–20 (Trs. 14–19). Franklin insists that the autopsy report showing gunshot wounds to the back and chest makes Bearden's testimony that Enriquez "was shot once, fell, then was shot three more consecutive times" inherently improbable. ECF 1 at 22. The Court disagrees. It is within the bounds of reason for a rational trier of fact to credit Bearden's testimony and the autopsy report as true. *See Coleman*, 566 U.S. at 651. Bearden's testimony that he turned around after seeing the first shot and hearing three more shots is consistent with the findings in the autopsy report showing three more gunshot wounds to the back and chest. *Compare* ECF 25-3 at 61 (Tr. 60) *and* ECF 25–4 at 15–20 (Trs. 14–19); *see generally* discussion *supra* page 33–34. Moreover, Franklin makes no attempt to show that Judge Eichenwald was objectively

51

unreasonable in reviewing and rejecting this argument. *See Coleman*, 566 U.S. at 651.

With regards to the first-degree murder conviction, Franklin misreads the law. The first-degree murder statute under which Franklin was convicted requires proof beyond a reasonable doubt that the defendant caused the death of another "by any kind of willful, deliberate and premeditated killing[.]" NMSA. § 30-2-1(A)(1). "Malice" is not mentioned in the statute.[30] *See id.* It is within the bounds of reason for a rational trier of fact to find that Franklin caused Enriquez's death through a willful, deliberate and premeditated killing. *See Coleman*, 566 U.S. at 651. At trial, the jury was presented with evidence that Enriquez owed Franklin money, that Franklin brought Enriquez to a remote location with geographic features conducive to hiding a body, that Franklin told Enriquez that "he knew too much," that Franklin shot Enriquez four times, and that Franklin hid Enriquez's body. *See generally* ECF 25. A rational trier of fact can reasonably conclude that Franklin's killing of Enriquez was premeditated. *See Coleman*, 566 U.S. at 651. Moreover, Franklin makes no attempt to show that Judge Eichenwald was objectively unreasonable in reviewing and rejecting this argument. *See Coleman*, 566 U.S. at 651.

At bottom, because Franklin offers no argument showing that Judge Eichenwald's

---

[30] Franklin elaborates on this argument in his state court habeas petition where he overstates the importance of the term "malice." *See* ECF 42-1 at 436 (Ex. BBB). The New Mexico Supreme Court has placed malice killings in the context of depraved mind murder, a different type of first-degree murder. *See New Mexico v. Dowling¸* 2011-NMSC-016, ¶ 11, 150 N.M. 110, 257 P.3d 930; *New Mexico v. Brown*, 1996-NMSC-073, ¶ 15, 122 N.M. 724, 931 P.2d 69. The older case law that Franklin relies upon demonstrates that deliberate intention to take a life demonstrates the express malice necessary for a first-degree murder conviction. *See New Mexico v. Vigil*, 1975-NMSC-013, ¶ 15, 87 N.M. 345, 533 P.2d 578.

Franklin also misunderstands the significance of a motive. He states that Bearden's testimony demonstrates that Bearden did not know a killing would occur, and that he "had no sense of hostility." ECF 42-1 at 436 (Ex. BBB). In his state court habeas petition, Franklin argues that the evidence at most shows second degree murder and cannot support deliberate intention – he carried a gun to protect himself from "pot growers" and only killed Enriquez after an "unconsidered and rash impulse[.]" *Id.* As found by the jury, Franklin brought Enriquez to a remote location with a gun, shot him four times, and hid the body in a cave. Franklin may interpret the evidence differently, but sufficient evidence exists for a rational jury to find deliberate premeditation.

decisions were contrary to federal law, much less unreasonable, the Court defers to the state court

conclusions that sufficient evidence exists to support Franklin's first-degree murder conviction.

Accordingly, Franklin is not entitled to habeas relief on his ineffective assistance of counsel claim.

### G. The Court denies as moot all pending procedural motions because the Petition is time barred and denied on the merits.

A court has the discretion to deny as moot any procedural motions in a habeas case after

denying the petition as time barred or after denying the petition on the merits. *See Swazo v. Wyo.

Dep't of Corrs.*, 23 F.3d, 332, 333 (10th Cir. 1994); *Watson v. McCollum*, 18-CV-529, 2018 WL

4376518, at *4 (W.D. Okla. July 2, 2018), *aff'd* 772 F. App'x 675 (10th Cir. 2019); *Morris v.

Ulibarri*, 513 F. App'x 777, 779 (10th Cir. 2013); *Gray v. Payne*, No. 23-3079, 2023 WL 8433977,

at *4 (10th Cir. Dec. 5, 2023). Here, the Court recommends finding that Franklin's Petition is time

barred, and that, even if it were timely, it the Court recommends denial on the merits. Accordingly,

the Court recommends denying as moot Franklin's Renewed Motion for Appointment of Counsel

[ECF 38], Franklin's Motion for Temporary Stay for Time Limit to File Reply [ECF 43];[31] and

Franklin's Motion to Enforce July 2, 2024 Order [ECF 44].

### VI.    CONCLUSSION

The Court **HEREBY RECOMMENDS** as follows:

- The Petition [ECF 1] be **DENIED WITH PREJUDICE** as untimely and insufficient

  to state a claim for habeas relief;

- Franklin's Renewed Motion for Appointment of Counsel [ECF 38] be **DENIED AS**

---

[31] While Franklin has not filed a reply brief in support of his Petition, the Court has sufficient information to recommend a disposition on the Petition given the depth of the record and the fact that Franklin has had several months to file a reply. *See* ECF 36.

**MOOT**;

- Franklin's Motion for Temporary Stay for Time Limit to File Reply [ECF 43] be

  **DENIED AS MOOT**;

- Franklin's Motion to Enforce July 2, 2024 Order [ECF 44] be **DENIED AS MOOT**;

- A certificate of appealability be **DENIED**.

_____

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

---

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**